O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONISKO AND SCHOLZ, LLP, on behalf of themselves and all others similarly situated; PAUL SCHOLZ, on behalf of themselves and all others similarly situated; CINDY SCHOELEN, on behalf of themselves and all others similarly situated,<br>　　　　　　　　　　Plaintiffs,<br>　　　　v.<br>B.S.D. CAPITAL, INC., doing business as LENDISTRY,<br>　　　　　　　　　　Defendant. | Case No.: 2:24-cv-10314-MEMF-SK<br><br>**ORDER GRANTING REQUEST FOR JUDICIAL NOTICE [ECF NO. 12-2] and GRANTING MOTION TO REMAND [ECF NO. 12]** |

　　　Before the Court is Plaintiffs' Request for Judicial Notice and Motion to Remand and. ECF Nos. 12, 12-2. For the reasons stated herein, the Court hereby GRANTS the Motion to Remand and GRANTS the Request for Judicial Notice.

/ / /

/ / /

/ / /

/ / /

I. **Factual Allegations**[1]

Plaintiff Onisko and Schollz, LLP ("Onisko") is a limited liability company located in Los Angeles County. Compl. ¶ 6. Plaintiffs Paul Scholz and Cindy Schoelen (together with Onisko, "Plaintiffs") are natural persons residing in Los Angeles County. *Id*. ¶ 7. As part of the class action, the putative class is defined as "[a]ll persons in California who submitted an application to Lendistry for a grant from the Small Business and Nonprofit COVID-19 Supplemental Paid Sick Leave Relief Grant during the statute of limitations period," and those who submitted on behalf of a business or non-profit. *Id*. ¶¶ 224, 228. Defendant B.S.D. Capital, who does business under the name "Lendistry," has its principal place of business in Los Angeles County. *Id*. ¶ 8.

Lendistry entered into a contract on April 25, 2023, with the Governor's Office to administer the Small Business and Nonprofit COVID-19 Supplemental Paid Sick Leave Relief Grant Program ("Grant Program"). *Id*. ¶¶ 12, 13. The Governor's Office required that Lendistry follow all applicable privacy laws in administering the Grant Program, including during the application process. *Id*. ¶ 51. As part of the contract, Lendistry was required to establish a procedure for applying to the Grant Program. *Id*. ¶ 15. Thus, Lendistry created a program website and application verification process. *Id*. As part of the application process, an applicant is required to create an account on the Lendistry app and verify their bank account. *Id*. ¶ 57.

Lendistry's website allowed a third-party bank verification partner to intercept communications between applicants and their financial institutions. *Id*. ¶ 62. This third-party partner accessed the putative class members' bank accounts without consent to repeatedly data mine their accounts to monetize the obtained data in transactions with other third parties. *Id*. ¶ 63.

II. **Procedural History**

The Plaintiffs filed suit in the Los Angeles County Superior Court on October 28, 2024. *See* Compl. The Plaintiffs bring sixteen claims under California law: (1) breach of contract; (2) negligence; (3) violation of California's Comprehensive Data Access and Fraud Act; (4) unlawful

---

[1] The following factual background is derived from the allegations in Plaintiffs' Complaint, ECF No. 1, Ex. A ("Complaint" or "Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

obtaining or use of personal information; (5) violation of California Penal Code Act section 631; (6) violation of California Penal Code section 632; (7) violation of California Penal Code section 632.7; (8) violation of California Penal Code section 638.51; (9) invasion of privacy: intrusion upon seclusion; (10) invasion of privacy: publication of private information; (11) invasion of privacy: breach of confidence; (12) violation of California Constitutional Invasion of Privacy; (13) civil conspiracy; (14) violation of Cal. Civ. Code sections 1709-1711; (15) breach of implied contract; and (16) violations of California Unfair Competition Law. *See generally* Compl. The Plaintiffs bring this action on behalf of themselves and other similarly situated applicants of the Grant Program using Lendistry's website. *Id*. The Complaint lists no exact amount in controversy.

Lendistry removed the action to this Court on November 27, 2024, under the jurisdiction of the Class Action Fairness Act ("CAFA"). *See* ECF No. 1 ("NOR"). The Plaintiffs filed the instant Motion to Remand on December 6, 2024. ECF No. 12 ("Motion" or "Mot."). With the Motion, they also filed a Request for Judicial Notice. ECF No. 12-2 ("RJN"). Lendistry filed their opposition on December 20, 2024. ECF No. 21 ("Opposition" or "Opp'n"). The Plaintiffs filed their reply on December 27, 2024. ECF No. 22 ("Reply").

On January 3, 2025, Lendistry filed a Motion to Dismiss. ECF No. 23. The Motion to Dismiss is fully briefed. ECF Nos. 30 (opposition), 32 (reply).

On May 30, 2025, the Magistrate Judge assigned to this case granted the Plaintiffs' Motion to Compel Jurisdictional Discovery subject to a temporary protective order. ECF No. 40. The protective order was issued on June 2, 2025. ECF No. 43. On June 6, 2025, the Plaintiffs filed a supplement to the Motion. ECF No. 44 ("Supp.").

On June 18, 2025, the Court deemed this matter appropriate for resolution without oral argument and vacated the hearing. ECF No. 45; *see also* C.D. Cal. L.R. 7-15

### III.  Applicable Law

#### A. Class Action Fairness Act

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). For class actions, district courts may exercise jurisdiction of the civil suit if the

(1) amount in controversy exceeds the sum or value of $5 million; (2) the parties are minimally diverse; and (3) the number of all proposed plaintiff classes aggregated is 100 or more. *See* 28 U.S.C. §§ 1332(d)(2), (5)(b). A defendant may file to remove an action originally filed in state court to federal court. *See* 28 U.S.C. § 1446. In order to file a removal, the case must meet the aforementioned requirements.

When the complaint does not specify the amount in controversy, the party requesting removal bears the burden of showing, by a preponderance of the evidence, that the aggregate amount in controversy exceeds the sum of $5 million. *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771– 72 (9th Cir. 2020). A defendant is permitted to make reasonable assumptions, founded on the allegations of the complaint, that rely on a chain of reasoning in order to assess the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019). The reasoning should not be "'akin to conjecture, speculation, or stargazing.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Parties are allowed to submit evidence outside the complaint, such as declarations or affidavits, at the time of removal to establish the amount in controversy. *Id*. When plaintiffs, in their motion to remand, challenge defendant's amount in controversy stated in their removal, both sides submit proof, and the Court then decides where the preponderance lies. *Id*.

CAFA requires only minimum diversity of the parties. 28 U.S.C. § 1332(d)(2)(A). Minimum diversity can be established when any member of the plaintiff class is a citizen of a state different from any defendant. *Id*. The citizenship of the proposed class of plaintiffs is determined based on the complaint by the date that the case became removable. *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). Defendants, as the moving party for removal, bear the burden of establishing minimum diversity with at least one member of the plaintiff class. *Sanchez v. Ameriflight, LLC*, 724 F. App'x 524, 526 (9th Cir. 2018). An allegation of minimum diversity may be based on information and belief. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1087 (9th Cir. 2014). However, a defendant cannot "establish removal jurisdiction by mere speculation and conjecture." *Ibarra*, 775 F.3d at 1197. Jurisdictional allegations are sufficient in the absence of factual or applied challenge. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

**REQUEST FOR JUDICIAL NOTICE (ECF NO. 12-2)**

I.  **Applicable Law**

A court may judicially notice facts that "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

II. **Discussion**

The Plaintiffs ask this Court to judicially notice Exhibit D and Appendix A. ECF Nos. 7, 10. The Plaintiffs argue that these Exhibits are judicially noticeable because they are webpages or documents on the California Secretary of State's website (Appendix A) and public records or government documents available from government websites (Exhibit D). *See* RJN. Lendistry does not object to any of these Exhibits.

The Court takes judicial notice of Exhibit D and Appendix A and the facts contained therein. The Court finds that it is undisputed that Exhibit D and Appendix A satisfy Federal Rule of Evidence 201(b) and that they are public documents available through the websites of government agencies. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (recognizing that courts may take judicial notice of a state agency record that is not subject to reasonable dispute). Therefore, the Court will take notice of Exhibit D and Appendix A, including the facts therein.

As such, the Court GRANTS the Request for Judicial Notice.

**MOTION TO REMAND (ECF NO. 12)**

I.  **Discussion**

Lendistry argues that removal is appropriate under CAFA. *See generally* NOR. The Plaintiffs respond that Lendistry has not proved minimum diversity and has not shown the amount in controversy requirement is met. *See generally* Mot. For the reasons explained below, the Court finds that removal was not proper. Accordingly, the Court GRANTS the Motion.

/ / /

**A. Removal Under CAFA Was Improper.**

    i. <u>Lendistry has properly asserted that the amount in controversy is reasonably met.</u>

As the party seeking removal, Lendistry bears the burden to show, by a preponderance of evidence, that the amount in controversy exceeds $5 million based on the allegations in the Complaint. *Greene*, 965 F.3d at 771–72. If the Complaint is silent on the total amount in controversy, as is the case here, then Lendistry is allowed to make reasonable assumptions. *Arias*, 936 F.3d at 925. These assumptions cannot amount to speculation or conjecture and should be based on allegations in the Complaint. *Ibarra,* 775 F.3d at 1197.

The Court finds that each plaintiff requests statutory damages of $5,000 for count six and count seven of the "Causes of Action." Compl. ¶¶ 445, 436. Lendistry points out that the Plaintiffs believe the putative class consists of "thousands of California businesses and California residents." NOR ¶ 15. Lendistry alleges that while "thousands" means more than 1,000, even if Lendistry calculated the total number of the putative class as 2,000 and multiplied that number by the damages sought by each member of the putative class for only the CIPA violations, the calculated amount in controversy would far exceed $5 million. NOR at 8. The Court finds that even if the total number of the putative class was 1,000, and only count six and count seven were included in determining the amount in controversy, it would still exceed the $5 million minimum ($5,000 statutory damages x two counts x 1,000 putative class members = $10 million).

In the Motion, the Plaintiffs argue that Lendistry's amount in controversy calculation is incorrect because the size of the putative class is not defined and the evidence given to the Governor's Office lists fifty-eight *recipients*.[2] Mot. at 14. Lendistry argues that this argument is incorrect. In particular, Lendistry insists that removal is determined by the four corners of the Complaint. Opp'n at 8; *see Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The Complaint clearly states that the putative class consists of "thousands of California businesses

---

[2] The Plaintiffs also argue that Lendistry failed to meet the CAFA jurisdictional requirements of having more than 100 putative class members. *See generally* Mot. However, the Complaint defines the putative class as "thousands of California businesses and California residents." Compl. ¶ 233. Plaintiffs do not engage with this argument further, and as such, the Court will not address the 100 putative class member minimum further.

and California residents." Compl. ¶ 233. Lendistry points out that the evidence that the Plaintiffs rely on of fifty-eight grant recipients are only *recipients* of the grant, not the grant *applicants* that the Complaint defines as the putative class. Opp'n at 6. The Plaintiffs do not engage any more with this argument in either the Reply or the Supplement, and as such, the Court will not address the Plaintiffs' amount in controversy objections further.

Taking the allegations in the Complaint at the time of the removal and Lendistry's calculations, the Court concludes that Lendistry, by a preponderance of the evidence, has established that the amount in controversy exceeds $5 million.

ii. <u>Lendistry has failed to satisfy the minimum diversity requirement.</u>

Lendistry argues that minimum diversity exists using the class definition that the Plaintiffs provide in their Complaint, since it defines the class as all persons or businesses "in California" who applied for the grant and that it necessarily includes people who applied for the grant who were in California but are not citizens of California. NOR at 6. The Plaintiffs respond that Lendistry's notice of removal is defective because Lendistry did not put forth any facts to allege any class member's citizenship to prove there is at least one diverse class member. Mot. at 9. They contend that Lendistry relies only on the class definition, even though the Complaint, as a whole, alleges that all putative class members and Plaintiffs are California citizens. *Id*.

The Court finds that Lendistry has failed to show that there is minimum diversity by a preponderance of the evidence. The Complaint defines the putative class as "all persons in California who submitted an application to Lendistry for a grant." Compl. ¶ 224. The "Natural Persons Subclass" of the main putative class is defined as "all Natural Persons who submitted on behalf of a business or nonprofit an application to Lendistry for a grant." *Id*. ¶ 228. While the class definitions themselves do not define or specify the citizenship of the putative class, the Complaint does allege that "Plaintiffs, all putative class members, and Defendant itself are citizens of this state." *Id*. ¶ 4. In light of the Plaintiffs' explicit allegation that all parties, including the members of the putative class, are California citizens, the Court finds Lendistry's argument that the Plaintiffs' class definition necessarily includes non-Californians unavailing and not founded on the Complaint. Lendistry cites *Broadway* to support their contention that a defendant is allowed to use class definitions to establish

minimum diversity. Opp'n at 6; *see Broadway Grill, Inc.*, 856 F.3d at 1279 (holding that minimum diversity was established based on the allegations in the complaint because it defined the putative class as all California merchants, not just merchants who were California citizens). The Plaintiffs argue that *Broadway* and similar cases Lendistry used to support its class definition argument do not apply because none of the cases Lendistry cited have the Plaintiffs' citizenship affirmatively alleged in the complaint, as is alleged in the Plaintiffs' Complaint.[3] Compl. ¶ 4 ("Plaintiffs, all putative class members, and Defendant itself are citizens of this state."). Additionally, the Plaintiffs argue that after the minimum diversity was challenged by the Plaintiffs in the Motion, it was Lendistry's burden to provide facts to support their minimum diversity allegations at least in their Opposition, which Lendistry did not do. Reply at 4; *see NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) ("[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged"). For these reasons, the Court finds that Lendistry has not met its burden to establish minimum diversity for the removal, and therefore that removal was improper.

## CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The Court GRANTS the Plaintiffs' Request for Judicial Notice.
2. The Court GRANTS the Plaintiffs' Motion to Remand.
3. The case is REMANDED to the Los Angeles County Superior Court forthwith.
4. Lendistry's Motion to Dismiss is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: June 24, 2025

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[3] The Plaintiffs have the same argument about Lendistry's reliance on *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118 (9th Cir. 2017) to establish Lendistry's use of class definitions, but *Brinkley* also does not affirmatively allege the citizenship of the putative class in their complaint.