O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ONISKO & SCHOLZ, LLP, PAUL SCHOLZ, and CINDY SCHOELEN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>B.S.D. CAPITAL, INC., d/b/a LENDISTRY,<br><br>Defendant. | Case No.: 2:24-cv-10314-MEMF-SK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [DKT. NO. 52]** |

Before the Court is the Motion for Costs and Expenses Pursuant to 28 U.S.C. § 1447(c) filed by Plaintiffs Onisko & Scholz LLP, Paul Scholz, and Cindy Schoelen. Dkt. No. 52 ("Motion"). For the reasons stated herein, the Court hereby GRANTS the Motion.

/

/

/

1

I. **Background**

A. **Factual Background**[1]

Plaintiff Onisko and Scholz, LLP ("Onisko") is a business located in Los Angeles County. Compl. ¶ 6. Plaintiffs Paul Scholz and Cindy Schoelen (together with Onisko, "Plaintiffs") are people residing in Los Angeles County. *Id*. ¶ 7.

Defendant B.S.D. Capital ("Lendistry") has its principal place of business in Los Angeles County. *Id*. ¶ 8. On April 25, 2023, Lendistry entered into a contract on with the Governor's Office to administer the Small Business and Nonprofit COVID-19 Supplemental Paid Sick Leave Relief Grant Program ("Grant Program"). *Id*. ¶¶ 12-13. The Governor's Office required that Lendistry follow all applicable privacy laws in administering the Grant Program, including during the application process. *Id*. ¶ 51. As part of the contract, Lendistry was required to establish a procedure for applying to the Grant Program. *Id*. ¶ 15. Thus, Lendistry created a program website and application verification process. *Id*. As part of the application process, an applicant is required to create an account on the Lendistry app and verify their bank account. *Id*. ¶ 57.

Lendistry's website allowed a third-party bank verification partner to intercept communications between applicants and their financial institutions. *Id*. ¶ 62. This third-party partner accessed the putative class members' bank accounts without consent to repeatedly data mine their accounts to monetize the obtained data in transactions with other third parties. *Id*. ¶ 63.

On October 28, 2024, Plaintiffs filed their class-action Complaint in Los Angeles Superior Court. *See generally* Compl. Their Complaint defined the putative class is as "[a]ll persons in California who submitted an application to Lendistry for a grant from the Small Business and Nonprofit COVID-19 Supplemental Paid Sick Leave Relief Grant during the statute of limitations period," and those who submitted on behalf of a business or nonprofit. *Id*. ¶¶ 224, 228. It also states that "Plaintiffs, all putative class members, and Defendant itself are citizens of this state [of California]." *Id.* at 4.

---

[1] The following factual background is derived from the allegation in Plaintiffs' Complaint, Dkt. No. 1-1 ("Compl."), except where otherwise indicated. The Court makes no finding on the truth of these allegations and includes them only as background.

On November 27, 2024, Lendistry filed its Notice of Removal, removing this case to federal court. Dkt. No. 1. Lendistry alleged there that, "[b]ecause the putative class purports to encompass 'all persons *in* California'—rather than all California citizens—it necessarily includes people that are *not* citizens of California." *Id.* ¶ 21.

### B. Procedural History

The Plaintiffs filed suit in the Los Angeles County Superior Court on October 28, 2024. *See* Compl. The Plaintiffs bring sixteen claims under California law: (1) breach of contract; (2) negligence; (3) violation of California's Comprehensive Data Access and Fraud Act; (4) unlawful obtaining or use of personal information; (5) violation of California Penal Code Act section 631; (6) violation of California Penal Code section 632; (7) violation of California Penal Code section 632.7; (8) violation of California Penal Code section 638.51; (9) invasion of privacy: intrusion upon seclusion; (10) invasion of privacy: publication of private information; (11) invasion of privacy: breach of confidence; (12) violation of California Constitutional Invasion of Privacy; (13) civil conspiracy; (14) violation of Cal. Civ. Code sections 1709-1711; (15) breach of implied contract; and (16) violations of California Unfair Competition Law. *See generally* Compl. The Plaintiffs bring this action on behalf of themselves and other similarly situated applicants of the Grant Program using Lendistry's website. *Id*. The Complaint lists no exact amount in controversy.

Lendistry removed the action to this Court on November 27, 2024, under the jurisdiction of the Class Action Fairness Act ("CAFA"). *See* Dkt. No. 1 ("NOR"). The Plaintiffs filed a Motion to Remand on December 6, 2024. Dkt. No. 12. The Court granted that Motion on June 24, 2025. Dkt. No. 47.

Plaintiffs filed the instant Motion for Attorneys' Fees on August 22, 2025. Dkt. No. 52 ("Motion"). Lendistry filed its Opposition on September 5, 5025. Dkt. No. 53 ("Opp'n"). Plaintiffs filed their Reply on September 12, 2025. Dkt. No. 54 ("Reply"). This Court heard oral argument on the Motion on October 9, 2025.

/

/

## II. Applicable Law

"Absent unusual circumstances, courts may award attorneys' fees under 28 U.S.C. § 1447(c) only where the removing party lacked an objectively reasonable basis[2] for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Fee awards are left to the discretion of the district court. *Id*. Unusual circumstances may include "a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction." *Id*.

"[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). "[W]hether the relevant case law clearly foreclosed the defendant's basis of removal" and "the clarity of the law at the time of removal" may be considered in determining the removal's reasonableness. *See id*. at 1066. "Clear factual distinctions" between the case in question and the cases that the parties cite as evidence are also relevant. *See Grancare, LLC v. Thrower ex rel. Mills*, 889 F.3d 543, 552 (9th Cir. 2018).

## III. Discussion

Lendistry argues that this Court should not reach the merits of whether Lendistry had an objectionably reasonable basis for removal for two reasons. First, Lendistry argues that the Motion is an improper motion for reconsideration of the remand order. Opp'n at 13-15. Second, Lendry argues that the Motion is untimely. Opp'n at 16-17. This Court addresses both arguments before turning to the merits.

### A. Plaintiffs' Motion is not a motion for reconsideration.

Lendistry argues that this Court should deny the Motion as an improper motion for reconsideration of the remand order. Opp'n at 13. In particular, Lendistry contends that since the

---

[2] Plaintiffs state that the Ninth Circuit employs a "reasonable litigant" standard, which they suggest encompasses an assessment of more than the "objectively reasonable basis for removal" standard. Motion at 7. Plaintiffs cite *Gardner v. UICI*, 508 F.3d 559 (9th Cir. 2007), to support the "reasonable litigant" standard. However, *Gardner* only employs this language once and in close relation to the basis for removal; otherwise, *Gardner* references the "objectively reasonable basis" standard from *Martin*. *Id*. at 562. Therefore, the Court applies the "objectively reasonable basis for removal" standard.

remand order did not address the request for fees that was included in Plaintiffs' Motion to Remand, Dkt. No. 47, "the Court already declined Plaintiffs' . . . request for fees and costs." Opp'n at 13. It further argues that this Court has considered and denied this request three times: in the Motion to Remand, in Plaintiffs' Reply, Dkt. No. 22, and in their supplemental brief, Dkt. No. 44. Lendistry therefore characterizes this motion as an impermissible request for "the Court to reconsider the same request made three times prior." Opp'n at 14.

In the Ninth Circuit, district courts ruling on a motion for fees must specify the legal basis for their conclusion.[3] *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 982-83 (9th Cir. 2008). "Explicit mathematical calculations are not required, but without a clear explanation of what the district court did, [the Court of Appeals] cannot review the award in a meaningful manner." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990). This Court does not interpret the present Motion as one asking for reconsideration. This is because this Court has yet to address Plaintiffs' requests for attorneys' fees. Had this Court intended to deny the request for fees in the Motion to Remand, or at any other time, this Court would have done so expressly.

Lendistry's authority to the contrary is easily distinguished. Lendistry cites *Clemons v. Mississippi*, 494 U.S. 738 (1990), for the idea that this case is analogous to the Supreme Court's statement that it "implicitly rejected [a party's] arguments . . . by refusing to address them." *Id.* at n.3. But the Supreme Court was referring to its decision not to engage with one of several arguments made in favor of a motion—not to a motion impliedly denied through the Court's silence. It also points to a nonbinding, unpublished case stating that "[t]he Court's refusal to discuss an argument constitute[d] an implicit rejection of th[e] argument." *Roy v. Cnty. of Los Angeles*, No. CV 12-09012-AB (FFMx), 2018 WL 3439168, at *4 (C.D. Cal. July 11, 2018). But, again, that statement's context was meaningfully different. That Court, addressing a Motion for Reconsideration on the basis that the Court had not considered one of the arguments against summary judgment (which was ultimately granted), instructed the parties that, while it had *considered* every argument against

---

[3] Plaintiffs make a similar argument relying on *Houden v. Todd*, 348 F. App'x 221, 223 (9th Cir. 2009). The parties are reminded that, under Ninth Circuit Rule 36-3, unpublished dispositions do not hold precedential value. *See Houden*, 348 App'x at 221 ("This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.").

summary judgment, it had not *discussed* every argument in its decision granting summary judgment. *Id.* at *1, *4. That Court did not state that the parties should construe the Court's silence on a pending motion as a refusal of the motion. Both cases reflect only the proposition that a court need not recite and respond to every argument a party makes. Neither justifies the proposition that Plaintiffs should have understood that, through this Court's lack of response to its Motion, the Motion was denied. Nor is this Court aware of any binding or nonbinding precedent that a Court's failure to address a properly brought motion should be taken as a rejection of the motion.

For these reasons, this Court declines to construe the Motion as one seeking to relitigate an issue Plaintiffs have already lost. To put it simply, the Motion cannot be a motion for reconsideration when this Court has not considered the request in the first place.

### B. Plaintiffs' Motion is timely.

Lendistry next argues that Plaintiffs' Motion is untimely and that this Court should decline to consider it on that basis. It argues that, if this Court treats Plaintiffs' Motion as a reconsideration motion, it is untimely because it was not "filed no later than 14 days after entry of the Order that is the subject of the motion or application." Local Rule 7-18; Opp'n at 16. Because "Plaintiffs filed the present Motion more than eight weeks after the Remand Order," Lendistry argues that "the Motion should also be denied on this independent basis." *Id.* As this Court has already explained that it will not be treating this Motion as one for reconsideration, Lendistry's arguments on this theory are not applicable.

This leaves Lendistry's arguments on the timeliness of this Motion as a motion for attorneys' fees. The Federal Rules of Civil Procedure generally require movants for attorneys' fees and costs to make their motion "no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2). And the Local Rules generally also require that "[a]ny motion or application for attorneys' fees [] be served and filed within fourteen (14) days after the entry of judgment or other final order." Local Rule 54-7. Lendistry argues that, regardless of which Rules govern, Plaintiffs' motion is untimely and should be stricken. Opp'n at 16-17.

As a general matter, Plaintiffs first made its requests for attorneys' fees in its Motion to Remand, on December 6, 2024. Because this was made well before fourteen days had passed after final judgment—when the Court ultimately granted remand on June 24, 2025—the request for fees was timely under both the federal and the local framework, if either controlled the Motion's timeliness requirements.

But the Motion is also not untimely because this Court's Civil Standing Order modifies the parties' deadlines. Both the Federal and Local Rules contemplate that a court's individual order overrides the default timelines for filing a motion for fees. Fed. R. Civ. P. 54(d)(2) (noting the rule applies "unless a statute or court order provides otherwise"); Local Rule 54-7 (same). And this Court's operative Civil Standing Order, § IX.E, establishes this Court's own set of timeline requirements for the filing of a fees motion. Key among these requirements is that, prior to filing a motion, the parties are instructed to meet and confer in good faith, provide to opposing counsel the billing records that substantiate the motion, and produce and confer on a Joint Statement on an itemization of fees. *Id.* And, "no more than 14 days before the filing of the motion, the moving party must provide to the opposing party" a final version of its Joint Statement on an itemization of fees. The parties were instructed to abide by this Court's Civil Standing Order, Dkt. No. 13, and warned that it "differs in some respects from the Local Rules," Civil Standing Order at 1. These are the standards by which this Court considers timeliness; they modify the otherwise-applicable Federal and Local Rules requirements. Lendistry has made no arguments in support of the idea that Plaintiffs' Motion is out of compliance with this Court's Civil Standing Order, nor is this court aware of such untimeliness. For these reasons, this Court finds that the Motion was timely filed.

**C. Lendistry had no objectively reasonable basis for removal.**

At issue next is whether Lendistry had an objectively reasonable basis for removal; if it did not, Plaintiffs are entitled to recover attorneys' fees under § 1147(c). For the reasons below, this Court finds Lendistry had no objectively reasonable basis for removal.

The removing party bears the burden of providing evidence to support its minimal diversity allegations when the requirement is in contention. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606,

613-14 (9th Cir. 2016) ("The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction . . . at the pleading stage, allegations of jurisdictional fact need not be proven unless challenged"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) ("[B]ecause we presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it").

Here, the core question is whether Lendistry had an objectionably reasonable basis for removal to federal court. In briefing for the Motion to Remand, Lendistry argued that minimum diversity necessarily existed using the class definition that Plaintiffs offered in their Complaint. Dkt. No. 47 at 7. It notes that, as the class definition includes all persons or businesses "in California" who applied for the grant, it necessarily includes people who applied and were in California but are not citizens of California. *Id.* Lendistry, as the party seeking a contested removal, had the burden to show that removal was proper by a preponderance of the evidence. CITE. But Lendistry put forth no other facts alleging any class member's citizenship to prove that at least one diverse class member existed.[4]

This Court granted Plaintiffs' motion to remand. Dkt. No. 47. It found that Lendistry had "failed to show that there is minimum diversity by a preponderance of the evidence." *Id.* at 7. Though the Complaint referred to the class definition as persons or businesses "in California," it also stated that "Plaintiffs, all putative class members, and Defendant itself are citizens of [California]." Compl. ¶ 4. Lendistry cited then (and cites now) authorities supporting the proposition that a class definition can suffice to create diversity for removal purposes. *See, e.g.*, *Broadway Grill, Inc. v. Visa*

---

[4] Although Lendistry references *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223 (9th Cir. 2019), which states that "a short and plain statement of the parties' citizenships based on information and belief… satisfie[s] [the defendant's] burden of pleading minimal diversity," this only applies if "[t]he defendant's citizenship allegations are *unchallenged*." *Id.* at 1225 (emphasis added). Here, Plaintiffs have been alleging that there was no minimal diversity from the time of the Complaint's filing—in effect, before Lendistry attempted to remove. Lendistry also cites *Brinkley v. Monterey Fin. Servs. Inc.*, 873 F.3d 1118, 1122 (9th Cir. 2017) and *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) to argue that Plaintiffs hold the burden of producing citizenship evidence. But these cases concern *exceptions* to CAFA that the non-removing parties attempted to invoke—a posture not seen here. They do not advise on a removing party's contention that CAFA applies. And, as already discussed, a moving party must prove its allegations of jurisdictional fact when they are disputed. *NewGen, LLC*, 840 F.3d at 613-14.

*Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017) (finding a class definition of "all California . . . entities who accepted Visa branded cards in California" included non-California citizens). But those cases are inapposite: They do not address a situation where, as here, a theory of diversity jurisdiction depends on accepting one part and disregarding another part of the Complaint. Moreover, even the proposed class definition itself makes no positions on the citizenship of its members. As the Ninth Circuit has put it:

> We acknowledge that our holding may result in some degree of inefficiency by requiring evidentiary proof of propositions that appear likely on their face. The inference drawn by the district court in this case was understandable. It is likely that most of the prospective class members—we would guess more than two-thirds of them—were California citizens at the time the lawsuit was filed. But it is also likely that some of them were not. . . . That a purchaser may have a residential address in California does not mean that person is a citizen of California.

*Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013). Because of this, this Court "f[ound] Lendistry's argument that the Plaintiffs' class definition necessarily includes non-Californians unavailing and not founded on the Complaint." Dkt. No. 47 at 7.

For similar reasons, this Court finds that there is no objectively reasonable basis to take part of the Complaint—the class definition—as per se basis to remove to federal court, while wholly disregarding another part of the Complaint—the Jurisdiction and Venue section—as an authority on whether the class was made up exclusively of California residents. There is no basis, in short, to accept part of the Complaint and reject the other in making allegations of minimal diversity.

Lendistry argues that jurisdictional data provided to Plaintiffs in June 2025 should be considered in this Court's determination of whether removal was objectively reasonable. Opp'n at 26 ("[A]ll elements for CAFA jurisdiction were met . . . Plaintiffs have had this information since June 2025"). This Court declines to consider data presented only in 2025 to determine, post hoc, whether the decision to remove in 2024 was objectively reasonable at the time that it was made. To do so would be to misapply the Ninth Circuit's direction that the touchstone inquiry is whether "the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at

141. Put another way, this Court understands the *Martin* test as one that considers what the parties knew and alleged *at the time of removal* to contextualize whether the decision was reasonable.[5]

And Lendistry proffered no reasonable basis for removal in its opposition to Plaintiffs' Motion to Remand. It only alleged that "Plaintiff's class action is determinative" of minimal diversity, and to the extent the Complaint contained allegations that "conflict with the putative class definition," this Court should disregard them. But, though the Jurisdiction and Venue section of Plaintiffs' Complaint certainly limited allegations like that of the putative class definition, it did not *contradict* the class definition; it only narrowed the putative class to those who were citizens of California. And Lendistry cited no authority for the proposition that this Court should simply disregard a pleading to the extent it constrains another, nor did it suggest any other factual or reasonable basis for its removal.

### D. Plaintiffs are entitled to recover some of their listed attorneys' fees.

Once a court has determined that a party is entitled to attorneys' fees, it must verify that the fees are reasonable. To do so, Ninth Circuit courts apply the lodestar method. *Camacho*, 523 F.3d at 973. "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1147-48 (9th Cir. 2001)). Courts must then determine if the result of that calculation is reasonable: "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which

---

[5] Plaintiffs argue—as an additional ground for finding that attorneys' fees should be awarded on the basis of improper removal—that it was objectively unreasonable for Lendistry to fail to review the jurisdictional data in its own possession before seeking to remove. Motion at 13-14. But the law is settled that even if the defendant has access to information that might show a case is removable, or could uncover such information through an investigation, the defendant is not *obligated* to remove within thirty days of service unless the ground for removal is obvious on the face of the complaint. See *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695-96 (9th Cir. 2005) (emphasis added) (even when the defendant's files contained the citizenship of relevant parties and showed complete diversity, the defendant was not obligated to remove within thirty days if the complaint did not affirmatively allege complete diversity). Moreover, as defendants do not have an affirmative duty to investigate jurisdictional data prior to removal, this Court is not inclined to rule that a failure to timely investigate, even if true, is proper basis for Plaintiffs to recover fees. For these reasons, the Court declines to also consider whether the failure to do its own investigation prior to removal was unreasonable.

are not subsumed within it." *Ferland*, 244 F.3d at 1149 n.4. "A district court may not rely on a contingency agreement to increase or decrease what it determines to be a reasonable attorneys' fee." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir. 2000). Accordingly, the Court considers Plaintiffs' alleged hourly rate and number of hours below.

i. Plaintiffs' counsel charged a reasonable hourly rate.

For the reasons below, this Court finds that Plaintiffs have sufficiently established the reasonableness of their attorney's hourly rate.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in their cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. The party opposing the request, in turn, "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness" of the movant's submitted facts. *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).

Plaintiffs' Motion requests this Court to approve a rate of $850/hour for Plaintiffs' sole counsel, J.R. Howell. Motion at 6. Howell represents that, though he accepted this case on a contingency basis, $850 is reflective of the rate he charges his hourly clients. Decl. of J.R. Howell ¶ 19 ("Howell Decl."), Dkt. No. 52-3; *see also* Exh. C, Dkt. No. 52-6 (Howell's representation agreement in another Los Angeles litigation case, representing an hourly rate of $850). In support of this hourly rate, he offers the 2023 Wolters Kluwer Real Rate Report, which indicates the quartiles of attorneys' fees based on location and experiences, Exh. A, Dkt. No. 52-5; a representation agreement with another hourly client, Exh. C., Dkt. No. 52-6; and billing records for the tasks for which counsel seeks fees, Exh. D, Dkt. No. 52-7. The latter demonstrates that the activity for which

Plaintiffs seek attorneys' fees began in November 2024 and continued until July 2025. *Id.* at 1, 25. It also shows that counsel seeks reimbursement for paralegal hours at the rate of $250 per hour.

This Court finds that Plaintiffs have met their initial burden of production on demonstrating the reasonableness of both rates. Plaintiffs' counsel has represented that he is in his nineteenth year of practice, that he has been recognized as an expert on matters involving privacy law relevant to this case, and that his professional affiliations and activities bolster his expertise. Howell Decl. ¶¶ 13-18. Plaintiffs also note that another judge in this District has recently approved a rate of $750 per hour for an attorney with nine fewer years of experience. Motion at 22 (citing *Moran v. ESOP Comm. of Aluminum Precision Prods, Inc. Emp. Stock Ownership Plan*, No. 24-cv-00642-MWF (ADSx), 2025 WL 1712397 (C.D. Cal. June 2, 2025)). They note, too, that Lendistry's own counsel has cited his own rate in 2024 for this matter as $880 per hour (and that this is reduced relative to his usual, unstated rate). Decl. of J. Jeventhal ¶ 2, Dkt. No. 15-1. Moreover, this Court's review of Plaintiffs' demonstration of prevailing community rates shows that an $850 hourly rate appears reasonable: In 2023, the median partner in Los Angeles with fewer than twenty-one years of experience charged a $747 hourly fee; the third-quartile amount was $1,102 per hour. Exh. D, Dkt. No. 52-7, at 7. Plaintiffs' counsel is an attorney with nineteen years of experience, so this—in conjunction with his other relevant expertise—suffices to establish that $850 is a reasonable amount for legal work he performed in 2024 and 2025.

Moreover, this Court finds that Lendistry has not carried its burden of rebuttal with evidence "challenging the accuracy and reasonableness" of Plaintiffs' counsel's fees. *Gates*, 987 F.2d at 1398. While they note that Plaintiffs have not provided other affidavits of other attorneys, they cite no authority—and this Court is not aware of any—requiring that the reasonableness of fees be proved through other attorneys' declarations. Instead, this Court finds that Plaintiffs' counsel's mode of proof—citing other fee determinations, national data accounting for location and experience of counsel, and their own hourly fee standard practice—suffices. Lendistry relatedly argues that Plaintiffs' counsel has not "identif[ied] any other privacy cases in which he has acted as counsel" and has identified "no evidence that he has specific expertise (much less experience)" in similar cases. Opp'n at 29. The Court has already found that Plaintiffs' counsel submitted proof of subject-

matter experience in privacy law, and Lendistry does not engage with Plaintiffs' specific proof to demonstrate it is inaccurate or unreasonable.[6] Lastly, Lendistry argues that Plaintiffs' counsel's appropriate rate is $550, on the basis of a declaration by the same counsel claiming that $550 was his hourly rate in another class-action case. Opp'n at 30. But counsel represents that he has recently increased his fees to account for increased demand and experience. Reply at 10. Because this Court has already determined that $850 is reasonable and aligned with counsel's location and experience, it sees no reason to use a previous hourly rate—set in 2020—to apply to work mostly done in 2025.

    Also included in the request for fees are paralegal hours, billed at the rate of $250 per hour. Plaintiffs substantiate this rate with the same 2023 fees report, which notes that, on a national level, the median paralegal billed at $235 per hour. Dkt. No. 52-7 at 4. While Plaintiffs have not offered evidence in support of their paralegal's experience and subject-matter expertise, this Court finds that these national estimates, coupled with the demonstrable increase in legal fees in Los Angeles relative to the national average, suffice to demonstrate that $250 is a reasonable hourly fee for a Los Angeles paralegal in 2025. Though Lendistry does not challenge the reasonableness of this rate in their Opposition, they note in the Joint Statement, in reference to the paralegal hours sought, that "Counsel's hourly rate is excessive." Dkt. No. 52-2 ("Joint Statement") at 90. This appears to be a form objection raised for every entry in the Joint Statement; Lendistry does not specifically object to non-counsel rates. Moreover, Lendistry has offered no evidence on the accuracy or reasonableness of the fees, or proposed what they believe a reasonable figure would be. Based on that, this Court finds that it is reasonable to accept Plaintiffs' proposed $250/hour number.

---

[6] Lendistry argues that this Court should not give Plaintiffs' counsel full credit for nineteen years of experience, noting that Plaintiffs' counsel has not appeared in a large amount of cases available on Westlaw. Opp'n at 29. But, as Plaintiffs' counsel notes, not all legal representations are matters of public record, so Westlaw appearances are not a strong measure of an attorney's expertise. *See* Exh. D, Dkt. No. 53-4 ("In matters that are not of public record, I have represented high-profile public figures in national politics, religion, and entertainment . . . ."). They also suggest that Plaintiffs' counsel "appears to have a separate career as an actor, director, and producer." Opp'n at 29-30. In support, they offer an iMDB.com listing showing that counsel has produced six short films between 2014 and 2019. Decl. of Sebastian van Roundsburg ¶ 7, Dkt. No. 53-1. He also appears listed as a director and a writer for some of those short films. Exh. C, Dkt. No. 53-4. This Court does not find the argument that these experiences negate or override Plaintiffs' legal qualifications compelling.

13

In short, because Plaintiffs have met their initial burden to demonstrate the accuracy and reasonability of their requested fee amounts, and Lendistry has not met its burden to rebut that evidence, this Court finds that $850/hour for counsel and $250/hour for paralegal labor on this case is reasonable.

ii. Plaintiffs are entitled to recover some of their alleged costs.

Lendistry next argues that, even if this Court finds that the grant of attorneys' fees is proper, Plaintiffs' claimed number of hours is unreasonable. In their Motion, Plaintiffs request that this Court award Plaintiffs $240,642.50—a sum based on 17.2 paralegal hours and 278.05 attorney hours. Motion ¶ 4. Lendistry asks this Court to reduce the hours calculation based on claimed hours that are "unreasonable because they were self-imposed, unnecessary, and avoidable." Opp'n at 30. For the reasons below, this Court finds that Plaintiffs are entitled to some, but not all, of their requests for fees in connection to the Motion to Remand.

Trial courts have "wide discretion" to calculate reasonable fees awards under § 1447(c). *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 447 (9th Cir. 1992); *Gotro v. R&B Realty Grp.*, 69 F.3d 1485, 1488 (9th Cir. 1995). A showing of bad faith is not required for a district court to grant fees. *Id.*

Lendistry cites a series of district court cases in this Circuit for the proposition that this Court should act to bring the fees award in this case in line with Circuit precedent. *See* Opp'n at 31-32 (collecting cases). While this Court has carefully considered the parties' arguments, it is not bound by decisions made by other trial courts in this District. This Court does note with concern, however, that Plaintiffs' request of $240,000 appears high in proportion to the underlying Motion to Remand. Accordingly, it will reduce the number of hours on which it orders Lendistry to pay fees.

Based on a careful review of the parties' arguments, objections, and the Joint Statement, this Court calculates the attorneys' fees to which Plaintiffs are entitled as $26,520. This accounts for 31.2 hours of attorney work and no hours of paralegal work in relation to the Motion to Remand.

In particular, this Court did not grant fees where the requests appeared to be unrelated to the Motion to Remand, do not appear to have been necessary to prevail on the Motion to Remand, or

where billing entries were vague and appeared to match prior entries without a clear explanation of what new work was done. Moreover, this Court was not inclined to grant requested recovery where it related to unsuccessful efforts to compel jurisdictional discovery.[7] *See* Dkt. No. 40 at 1 (Magistrate Judge Kim finding that "Plaintiffs ha[d] not convincingly shown why more information [was] needed . . . before the motion for remand c[ould] be decided"). This Court believes that this calculation fairly strikes the balance between "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party" and "not undermining Congress's basic decision to afford defendants a right to remove . . . when the statutory criteria are satisfied." *Martin*, 546 U.S. at 140.

## IV. Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiffs' Motion for Attorneys' Fees is GRANTED in part;
2. Plaintiffs are hereby awarded fees in the amount of $26,520.

IT IS SO ORDERED.

Dated: October 27, 2025

_____
MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

---

[7] At the October 7 hearing, counsel for Lendistry argued that this Court should not award attorneys' fees to Plaintiffs based on unsuccessful efforts to compel jurisdictional discovery. This Court has already declined to award fees for that basis.